**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09 CR 152 |
| | ) | |
| KIM EVANS, | ) | |
| DEZMOND SWANSON, and | ) | |
| CORLEY SMITH, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

AMY J. ST. EVE, District Court Judge:

A grand jury returned a superseding indictment against Defendants Kim Evans, Dezmond Swanson, and Corley Smith on July 21, 2009, charging each of them with one count of bank robbery in violation of 18 U.S.C. § 2113(a) and one count of unlawful use of a firearm in furtherance of that robbery in violation of 18 U.S.C. § 924(c)(1)(A). (R. 40, Superseding Indictment.) The grand jury also charged Defendant Evans with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1). (*Id.*)

The parties have filed various motions *in limine* seeking to have certain information excluded from evidence at trial. Defendant Evans seeks to exclude from trial: (1) his prior convictions, (2) evidence of uncharged bank robberies, (3) an informant's statements regarding the charged bank robbery, and (4) evidence regarding his flight from law enforcement agents. Defendant Smith seeks to exclude from trial: (1) testimony that he was preparing to flee from law enforcement agents, (2) evidence that law enforcement agents recovered a knife and suspected marijuana and cocaine from the trunk of a Cadillac in which Defendants were

traveling, (3) evidence of uncharged bank robberies, (4) an informant's statements regarding the charged bank robbery, and (5) his prior drug convictions.  Finally, the government seeks to: (1) preclude evidence and argument regarding the government's motivation for investigating or prosecuting this case, (2) preclude Defendants from requesting or mentioning discovery in the jury's presence, (3) exclude non-pertinent traits of Defendants' character, (4) exclude evidence regarding the confidential informant's identity, (5) preclude defense counsel from contacting jurors after the trial, (6) preclude Defendants from making "golden rule" arguments, and (7) preclude Defendants from improperly using quotations during closing arguments.[1]  For the following reasons, the Court grants in part and denies in part the parties' motions *in limine*.

## LEGAL STANDARD

Trial courts have broad discretion in ruling on evidentiary issues before trial.  *See Jenkins v. Chrysler Motors Corp.*, 316 F.3d 663, 664 (7th Cir. 2002); *United States v. Lillie*, No. 08 CR 717, 2009 WL 3518157, at *1 (N.D. Ill. Oct. 28, 2009).  Accordingly, "[a]lthough the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials."  *Luce v. United States*, 469 U.S. 38, 41 n.4, 105 S.Ct. 460, 463 (1984); *see also Lillie*, 2009 WL 3518157, at *1.  An *in limine* ruling avoids delays and allows the parties an opportunity to prepare themselves and witnesses for the introduction or exclusion of the evidence at issue.  *See Wilson v. Williams*, 182 F.3d 562, 566 (7th Cir. 1999); *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436,

---

[1] The Court previously granted the government's motions to: (1) exclude argument or evidence regarding outrageous government conduct, (2) exclude evidence or argument of Defendants' potential penalties if convicted, (3) exclude family-needs evidence, and (4) preclude jury-nullification evidence and argument.  (*See* R. 127, 5/13/10 Minute Order.)  Further, Defendant Swanson did not file a response to the government's motions *in limine*.

440 (7th Cir. 1997) ("The prudent use of the in limine motion sharpens the focus of later trial proceedings and permits the parties to focus their preparation on those matters that will be considered by the jury."); *United States v. Connelly*, 874 F.2d 412, 416 (7th Cir. 1989). Ultimately, an *in limine* motion "performs a gatekeeping function and permits the trial judge to eliminate from further consideration evidentiary submissions that clearly ought not be presented to the jury because they clearly would be inadmissible for any purpose." *Jonasson*, 115 F.3d at 440.

Regardless of a court's initial ruling on an *in limine* motion, the court may adjust its ruling during the course of the trial. *See Farfaras v. Citizens Bank & Trust of Chicago*, 433 F.3d 558, 565 (7th Cir. 2006) (citing *Luce*, 469 U.S. at 41-42, 105 S.Ct. at 463). Furthermore, while the most common use of motions *in limine* is to seek exclusion of evidence, *see Lillie*, 2009 WL 3518157, at *1 ("the party moving to exclude evidence *in limine* has the burden of establishing that the evidence is not admissible for any purpose"), "the motion in limine can be used to get a ruling that evidence is admissible." 21 Charles Alan Wright & Kenneth W. Graham, Jr., Fed. Prac. & Proc. Evid. § 5037.10 (2d ed. 2009); *see also United States v. Cox*, 577 F.3d 833, 835, 838-39 (7th Cir. 2009) (upholding trial court's *in limine* ruling that certain evidence was admissible).

## ANALYSIS

I.  **Defendants' Motions**

    A.  **Defendants Evans's and Smith's Prior Convictions**

        1.  **Rule 609**

Defendants Evans and Smith ask the Court to prevent the government from impeaching

3

them with their prior convictions if they testify at trial.  Federal Rule of Evidence 609 "governs the admissibility of a witness's prior convictions for impeachment purposes," *United States v. Rogers*, 542 F.3d 197, 200 (7th Cir. 2008), and provides in relevant part that:

> evidence that an accused has been convicted of [a crime punishable by death or imprisonment in excess of one year under the law under which the witness was convicted] shall be admitted if the court determines that the probative value of admitting this evidence outweighs its prejudicial effect to the accused. . . . Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect.

Fed. R. Evid. 609(a)(1), (b).  The purpose of Rule 609 is "to ensure that 'convictions over 10 years old will be admitted very rarely and only in exceptional circumstances.'" *United States v. Redditt*, 381 F.3d 597, 601 (7th Cir. 2004).  The ten-year clock "starts at the witness's release from any physical confinement, or in the absence of confinement, the date of conviction," and "the end date of the time limit for impeaching convictions is the start of the trial at which the witness is testifying." *Rogers*, 542 F.3d at 201.  "'[C]onfinement' for purposes of the ten-year time limit in Rule 609(b) does not include periods of probation or parole." *Id.*

Generally, "'the details of the prior conviction should not be exposed to the jury.'" *United States v. Douglas*, 408 F.3d 922, 929 (7th Cir. 2005) (quoting *United States v. White*, 222 F.3d 363, 370 (7th Cir. 2000), with internal quotation from *White* omitted).  As such, even where a prior conviction is admissible, the government may not "harp on the witness's crime, parade it lovingly before the jury in all its gruesome details, and thereby shift the focus of attention from the events at issue in the present case to the witness's conviction in a previous case.'" *United States v. Smith*, 454 F.3d 707, 716 (7th Cir. 2006) (quoting *Campbell v. Greer*, 831 F.2d 700,

4

716 (7th Cir. 1987)). The Rule, rather, "restricts the introducing party to 'identifying the particular felony charged, the date, and the disposition of a prior conviction.'" *United States v. Barnhart*, 559 F.3d 737, 747 (7th Cir. 2010) (quoting *Smith*, 454 F.3d at 716).

Convictions that are ten years old or younger, even if only by a matter of weeks, are admissible if their probative value outweighs their prejudicial effect. *See United States v. Jackson*, 546 F.3d 801, 819 (7th Cir. 2008) (noting that "[a]ny perception of arbitrariness [regarding the ten-year threshold] is the inevitable result of a rule that conditions the admissibility of evidence on its age"). Convictions that are more than ten years old are not per se inadmissible but are subject, rather, to "an asymmetrical balancing test, one that requires the probative value of a prior conviction to *substantially* outweigh the prejudice caused by its admission into evidence." *Rogers*, 542 F.3d at 201 (emphasis in original); *see also Jackson*, 546 F.3d at 819. Pursuant to this standard, "impeachment by a conviction falling outside the rule's ten-year time limit should be permitted only in rare and exceptional circumstances." *Rogers*, 542 F.3d at 201.

The Seventh Circuit teaches that in assessing a prior conviction's probative value and prejudicial effect, courts should consider the following to guide their admissibility decision: "'(1) the impeachment value of the prior crime; (2) the point in time of the conviction and the defendant's subsequent history; (3) the similarity between the past crime and the charged crime; (4) the importance of the defendant's testimony; and (5) the centrality of the credibility issue.'" *United States v. Gant*, 396 F.3d 906, 909 (7th Cir. 2005) (quoting *Rodriguez v. United States*, 286 F.3d 972, 983 (7th Cir. 2002)); *see also United States v. Montgomery*, 390 F.3d 1013, 1015 (7th Cir. 2004). When the government is authorized to impeach a defendant with a prior

5

conviction, the defendant is entitled to have the Court admonish the jurors with an instruction that they should consider the conviction solely to evaluate the defendant's truthfulness as a witness. *See Jackson*, 546 F.3d at 820 (noting courts' presumption that jurors follow their instructions); 7th Cir. Pattern Crim. Jury Instruction 3.05.

## 2. Defendant Evans's Prior Convictions

Defendant Evans seeks to have excluded from evidence at trial his: (1) 1990 conviction for delivery of cocaine, (2) 1991 conviction for aggravated battery, (3) 1994 conviction for unlawful use of a weapon by a felon, (4) 1994 conviction for unlawful possession of a weapon by a felon, (5) 1996 conviction for aggravated battery, (6) 2000 conviction for possession of a controlled substance, (7) 2002 conviction for possession of a stolen vehicle, and (8) 2008 conviction for aggravated assault. (R. 109, Def. Evans's Mots. in Limine at 1; R. 130, Gov't's Consolidated Resp. at 1.) These convictions, Defendant Evans argues, have little probative value and a high potential for prejudice. (R. 109, Def. Evans's Mots. in Limine at 2.) The government seeks to use all of the convictions – including the ones that are more than ten years old – to impeach Defendant Evans if he testifies at trial.[2]

The government has not shown that the probative value of the 1990-1996 convictions substantially outweighs their prejudicial effect.[3] As explained below, the government may use

---

[2] During the May 20, 2010, final pretrial conference, the parties indicated that the government does not intend to use Defendant Evans's prior convictions during its case-in-chief because Defendant Evans has agreed to stipulate that he has a prior felony conviction, an element of the Section 922(g) count.

[3] The parties have not provided the Court with the specific date of Defendant Evans's release for his May 10, 2000, conviction for possession of a controlled substance, but they agreed during the May 20, 2010, final pretrial conference that it was within Rule 609(a)(1)'s ten-year period.

Defendant Evans's three more-recent convictions to impeach him, which reduces the incremental impeachment value of the older convictions. Further, Defendant Evans's credibility will be at issue if he testifies. While the potential for unfair prejudice is reduced because none of the 1990-1996 convictions – with the exception of the unlawful-possession-of-a-weapon conviction – is for a crime that is similar to those charged here, *see Rodriguez*, 286 F.3d at 984, all of the excluded convictions occurred fourteen years or more ago. That time lapse significantly reduces their probative values. In weighing these factors, the government therefore may not use the 1990-1996 convictions to impeach Defendant Evans.

The government may use the 2000-2008 convictions for impeachment, however, because their probative value outweighs their prejudicial effect. None of those convictions is similar to the charged crimes, *see United States v. Hernandez*, 106 F.3d 737, 740 (7th Cir. 1997), and Defendant Evans's testimony and credibility will certainly be an important aspect of the trial if he testifies, especially if – as is certain – his testimony conflicts with that of other witnesses. *See United States v. Thomas*, No. 02-3386, 2003 WL 22473835, at *5 (7th Cir. Oct. 23, 2003); *United States v. Smith*, 131 F.3d 685, 687 (7th Cir. 1997). The 2000-2008 convictions will also have a significant impeachment value. In particular, the conviction for possession of a stolen vehicle suggests that Defendant Evans's honesty is lacking. *See Jackson*, 546 F.3d at 819. As the Seventh Circuit has stated in a Rule 608(b) analysis, "people generally regard acts such as stealing (and receiving and using stolen property) as acts that reflect adversely on a man's honesty and integrity." *Varhol v. Nat'l R.R. Passenger Corp.*, 909 F.2d 1557, 1567 (7th Cir. 1990) (internal quotation omitted and noting also that "such acts 'do disclose a disregard for the rights of others which might reasonably be expected to express itself in giving false testimony

7

whenever it would be to the advantage of the witness. If the witness had no compunctions against stealing another's property . . . it is hard to see why he would hesitate to obtain an advantage for himself or a friend in trial by giving false testimony.'" (quoting David W. Louisell & Christopher B. Mueller, 3 Fed. Evid. § 305, at 226 (1979))). Further, for all of the 2000-2008 convictions, Defendant Evans was either convicted or released from custody within ten years of trial, and his aggravated-assault conviction occurred within two years of trial. Accordingly, the government may use Defendant Evans's 2000, 2002, and 2008 convictions to impeach him at trial. Should Defendant Evans request it, the Court will provide the jury with the appropriate limiting instruction to further reduce the risk of unfair prejudice. *See Jackson*, 546 F.3d at 820.

### 3. Defendant Smith's Prior Convictions

Defendant Smith seeks to have excluded from evidence at trial his two 2008 convictions for possession of a controlled substance, arguing that they have no relevance, do not involve an act of dishonesty or a false statement, and will lead the jury to believe that he has a propensity to commit crimes. (R. 122, Def. Smith's Mots. in Limine at 3.) The Rule 609 factors support use of Defendant Smith's convictions for impeachment purposes.

Defendant Smith's convictions will provide the jury with an additional basis on which to judge his credibility, and the importance of his testimony – and therefore of his prior convictions – will only increase if, as expected, his testimony conflicts with that of other witnesses. *See Thomas*, 2003 WL 22473835, at *5; *Smith*, 131 F.3d at 687. Further, the convictions are only two years old, and the underlying drug-related crimes are dissimilar to both a bank robbery charge and a use of a weapon in connection with a bank-robbery charge. *See Hernandez*, 106 F.3d at 740. Finally, that a defendant's prior conviction did not involve dishonesty does not

8

render that conviction inadmissible. *See United States v. Causey*, 9 F.3d 1341, 1344 (7th Cir. 1993); *United States v. Nururdin*, 8 F.3d 1187, 1192 (7th Cir. 1993). To further diminish the possibility that his prior convictions will unfairly prejudice him, the Court will provide the jury with the appropriate limiting instruction if Defendant Smith so requests. *See Jackson*, 546 F.3d at 820.

### B. Evidence of Other Bank Robberies and the Informant's Statements

Defendants argue that the Court should exclude evidence of two previous bank robberies and statements that a confidential informant made to law enforcement agents. Because the government does not object to the exclusion of the uncharged bank robberies (R. 130, Gov't's Consolidated Resp. at 6), the Court will only address the admissibility of information that the confidential informant provided. That information, Defendants argue, is irrelevant and unduly prejudicial and would violate their rights under the Confrontation Clause of the Sixth Amendment if admitted at trial. (R. 109, Def. Evans's Mots. in Limine at 4.) In its response, the government specifies that it seeks to elicit testimony from one FBI agent that law enforcement agents began conducting surveillance of the Cadillac in which Defendants were driving "because the officers believed the occupants may be intending to rob a bank after having received a tip." (R. 130, Gov't's Consolidated Resp. at 8.)

"The Federal Rules of Evidence prohibit the admission of hearsay: out-of-court statements made by non-witnesses that are offered to prove the truth of the matter asserted." *United States v. Taylor*, 569 F.3d 742, 749 (7th Cir. 2009); *see also United States v. Harper*, 463 F.3d 663, 668 (7th Cir. 2006); Fed. R. Evid. 802. As the Seventh Circuit has explained,

> "We exclude out-of-court statements as hearsay for several reasons. First, the declarant, that is the person who made the statement, rather than the intermediary

9

> who relates it, was not under oath when he made the statement. Second, the declarant is not present at trial. His absence deprives the trier-of-fact of the opportunity to assess the declarant's demeanor and credibility. Third, the declarant is not subject to cross-examination."

*United States v. Linwood*, 142 F.3d 418, 426 (7th Cir. 1998) (quoting *United States v. Norwood*, 798 F.2d 1094, 1097 n.4 (7th Cir. 1986)).

"'Whether a statement is hearsay and, in turn, inadmissible, will most often hinge on the purpose for which it is offered.'" *United States v. Breland*, 356 F.3d 787, 792 (7th Cir. 2004) (quoting *Linwood*, 142 F.3d at 424-25). "Every statement that is made by someone other than the declarant while testifying at trial could, in theory, be used for the truth of the matter asserted. The fact of the matter, however, is that not every *potentially* hearsay statement is inadmissible, for there will often be a non-hearsay use for it." *Linwood*, 142 F.3d at 425 (emphasis in original). In other words "'[i]f . . . an extrajudicial utterance is offered, not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted, the hearsay rule does not apply.'" *Breland*, 356 F.3d at 792 (quoting *Lee v. McCaughtry*, 892 F.2d 1318, 1324 (7th Cir. 2004), with internal quotation from *Lee* omitted).

The government has indicated that it will not use any of the confidential informant's statements for their truth, and the Seventh Circuit has repeatedly recognized that "statements offered to 'establish the course of the investigation,' rather than to prove the truth of the matter asserted, are nonhearsay."[4] *Taylor*, 569 F.3d at 749; *United States v. Akinrinade*, 61 F.3d 1279,

---

[4] Because the government does not seek to offer the confidential informant's statements for the truth of the matters asserted therein, Defendant Evans's reliance on *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), is unfounded. "[T]he problem that *Crawford* addresses is the admission of hearsay, which is, of course, an out-of-court statement admitted for its truth." *United States v. Dodds*, 569 F.3d 336, 341 (7th Cir. 2009); *see also Taylor*, 569 F.3d at 750; *United States v. Eberhart*, 434 F.3d 935, 939 (7th Cir. 2006) ("The Confrontation Clause

1283 (7th Cir. 1995); *United States v. Sanchez*, 32 F.3d 1002, 1005 (7th Cir. 1994); *United States v. Martinez*, 939 F.2d 412, 415 (7th Cir. 1991). Seventh Circuit law "'leaves no doubt that this is a nonhearsay purpose.'" *Breland*, 356 F.3d at 792 (quoting *Linwood*, 142 F.3d at 425); *see also Dodds*, 569 F.3d at 341; *United States v. Mejia*, 909 F.2d 242, 247 (7th Cir. 1990) (noting that evidence that law enforcement agents had received a tip was relevant to show why the government was surveilling the defendant's home).

Offering out-of-court statements for the "facially benign purpose" of establishing the course of an investigation "does not guarantee admittance," however, as courts must still analyze the statements under Rule 403. *United States v. Lovelace*, 123 F.3d 650, 652 (7th Cir. 1997). If "the potential prejudicial effect of the jury considering testimony for a hearsay purpose does not substantially outweigh the probativity of the testimony's intended non-hearsay use, it is within his broad discretion to admit the evidence into the record, provided that a limiting instruction is given upon request." *Linwood*, 142 F.3d at 425 (noting that courts presume that jurors follow their instructions).

The Seventh Circuit "has warned against the potential for abuse when police testify to the out-of-court statements of a confidential informant," *United States v. Silva*, 380 F.3d 1018, 1020 (7th Cir. 2004), and has noted that courts have been "justifiably wary" of such testimony. *Lovelace*, 123 F.3d at 653. As the *Lovelace* Court explained,

> The worry with a tip containing a specific charge of criminality is that it has great potential to be credited by the jury. Such a tip can be particularly prejudicial where it addresses a disputed issue or is made by a knowledgeable declarant (and

---

'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" (quoting *Crawford*, 541 U.S. at 59 n.9, 124 S.Ct. at 1369, with separate quotation omitted)).

11

> therefore presumably believed by the jury). Less prejudicial are tips that are corroborated by uncontested evidence or tips whose declarants are available for cross-examination.

*Id.* (internal citation omitted).

The government's proffered testimony is inadmissible under Rule 403 because its potential for unfair prejudice substantially outweighs its probative value. Testimony that law enforcement agents received a tip indicating that Defendants may have been intending to rob a bank is particularly prejudicial, especially without the ability to challenge the person who provided the tip or even knowing who that person is. The Court could limit the potential for unfair prejudice by giving the jury a limiting instruction. *See Breland*, 356 F.3d at 792 n.4 (noting: "As a practical matter, district judges would be well served to ask defense counsel if they would like the court to give a cautionary or limiting instruction whenever evidence is admitted for a limited purpose. . . . Whether counsel wants a limiting instruction given is, of course, a matter of trial strategy."). Such an instruction, however, would not change the conclusion that the potential for unfair prejudice would substantially outweigh the probative value because the tip suggests that Defendants were going to commit the crime with which they have been charged. *See United States v. Mancillas*, 580 F.2d 1301, 1310 (7th Cir. 1978) (noting that "the tip evidence [] would appear to make probable only one fact: that the law enforcement agents had a reason to be where they were at the pertinent times. But there was no suggestion here of any improper law enforcement purposes, and in any event the agents' reasons for investigation were most assuredly not something the Government had to prove to carry its burden. The fact proved, then, is of only minimal 'consequence to the determination of the action.'"). Indeed, the Seventh Circuit has recognized that allowing "'testimonial repetition of a

declarant's out-of[-]court charge that the defendant would engage or was engaged in specific criminality would seem to create too great a risk that these dangers of prejudicial impact will actualize. That risk cannot be justified simply to set forth the background of the investigation.'" *United States v. Williams*, 133 F.3d 1048, 1052 (1998) (quoting *Mancillas*, 580 F.2d at 1310). The proffered testimony would be particularly prejudicial here because the source of the tip, a confidential informant, will be unavailable for cross-examination. *See Lovelace*, 123 F.3d at 653.

The Court is mindful of the government's concern that "[w]ithout some explanation, the jury would be left to speculate as to how it was [that] the FBI began to conduct a bank robbery investigation before the bank robbery even occurred." (R. 130, Gov't's Consolidated Resp. at 8.) "If a jury would not otherwise understand why an investigation targeted a particular defendant, the testimony could dispel an accusation that the officers were officious intermeddlers staking out [a defendant] for nefarious purposes." *Silva*, 380 F.3d at 1020; *see also Williams*, 133 F.3d at 1052 ("There is a clear distinction between an agent testifying about the fact that he spoke to an informant without disclosing the contents of the conversation and the agent testifying about the specific contents of the conversation-which is inadmissible hearsay."); 2 McCormick on Evidence § 249 (6th ed. 2009) ("The officers should not be put in the misleading position of appearing to have happened upon the scene and therefore should be entitled to provide some explanation for their presence and conduct."). Due to the conflicting dangers to defendants and the government, McCormick – which the *Silva* Court cited with approval – suggests that "a statement that an officer acted 'upon information received,' or words to that effect, should be sufficient." 2 McCormick on Evidence § 249 (6th ed. 2009). The Court adopts that suggestion,

and the government may therefore elicit testimony that law enforcement agents were conducting surveillance because they had received information or a tip from an informant.

### C. Evans's Flight from Law Enforcement Agents

Arguing that he had an independent reason to flee and that flight evidence would be unduly prejudicial, Defendant Evans asks the Court to exclude evidence that he attempted to flee law enforcement agents after the charged bank robbery had occurred. Evidence of a defendant's flight may be admissible "to support an inference of consciousness of guilt of the crimes charged." *United States v. Ajijola*, 584 F.3d 763, 766 (7th Cir. 2009). "This principle rests on a belief that a defendant would not have run from the police unless he knew he had done something wrong (and, thus, something to fear from capture by the police)." *United States v. Hunter*, 145 F.3d 946, 951 (7th Cir. 1998).

Recognizing, however, the "Supreme Court's cautionary language urging courts to be wary of the probative value of flight evidence," *United States v. Robinson*, 161 F.3d 463, 469 (7th Cir. 1998) (citing *Wong Sun v. United States*, 371 U.S. 471, 483 n.10, 83 S.Ct. 407 (1963)), the Seventh Circuit has directed "district courts to exercise caution in admitting evidence of a defendant's flight." *Hunter*, 145 F.3d at 951; *see also United States v. Rodriguez*, 53 F.3d 1439, 1451 (7th Cir. 1995) (noting that the Seventh Circuit "has discouraged reliance on flight as evidence of guilt because of its often minimal probative value"); *United States v. Williams*, 33 F.3d 876, 879 (7th Cir. 1994) ("Although we allow evidence of flight to be presented, we require careful deliberation in its admission."). Additionally, the Seventh Circuit Pattern Criminal Jury Instructions Committee has recommended that courts not give an instruction regarding a

defendant's flight due to its potential for unfair prejudice.[5]  *See* 7th Cir. Pattern Crim. Jury Instruction 3.20; *see also Rodriguez*, 53 F.3d at 1451 (concluding that "flight instructions should be given with caution, if at all"); *Williams*, 33 F.3d at 879 ("Because the probative value of flight evidence is often slight, there is a danger that a flight instruction will isolate and give undue weight to such evidence.").

"The probative value of evidence of flight depends on the strength of the inferences that can be drawn from the flight to actual guilt of the crime charged." *United States v. Wilson*, 237 F.3d 827, 834 (7th Cir. 2001). Specifically:

> the probative value of flight as evidence of a defendant's guilt depends on the degree of confidence with which four inferences can be drawn: (1) from behavior to flight; (2) from flight to consciousness of guilt; (3) from consciousness of guilt to consciousness of guilt concerning the crime charged; and (4) from consciousness of guilt concerning the crime charged to actual guilt of the crime charged.

*Williams*, 33 F.3d at 879 (quoting *United States v. Levine*, 5 F.3d 1100, 1107 (7th Cir. 1993)); *see also United States v. Skoczen*, 405 F.3d 537, 548 (7th Cir. 2005); *United States v. Zabic*, 745 F.2d 464, 471 (7th Cir. 1984).

The probative value of Defendant Evans's flight from law enforcement agents is substantial, as all four inferences can be drawn. Roughly two hours after the charged bank robbery occurred, FBI agents will testify that Defendants returned to the area in which law enforcement agents had been conducting surveillance earlier in the day. Soon after the law enforcement agents made themselves visible to Defendants, the car in which they were traveling – which, the government contends, contained incriminating evidence – sped away and crashed.

---

[5] Defendant Evans has nevertheless requested that the Court provide the jury with a flight instruction. (*See* R. 138, Def. Evans's Proposed Jury Instructions at 5.)

The FBI agents will further testify that Defendant Evans, who was wearing clothes that matched those that one of the bank-robbery suspects had worn, immediately attempted to flee on foot and was apprehended with the assistance of numerous law enforcement agents.

The short period of time between the charged crime and Defendant Evans's flight is significant. As the Seventh Circuit has stated, in assessing the third and fourth inference factors, "courts have placed great reliance on the proximity in time of the flight to the crime charged." *United States v. Howze*, 668 F.2d 322, 325 (7th Cir. 1982); *see also United States v. Jackson*, 572 F.2d 636, 640 (7th Cir. 1978) ("'[T]he immediacy requirement is important. It is the instinctive or impulsive character of the defendant's behavior, like flinching, that indicates fear of apprehension and gives evidence of flight such trustworthiness as it possesses.'" (quoting with approval *United States v. Myers*, 550 F.2d 1036, 1051 (5th Cir. 1977))). Like the other factors, the short period of time between the bank robbery and Defendant Evans's flight raises a strong inference of guilt.[6]

According to Defendant Evans, his attempt to flee from law enforcement agents does not strongly infer that he is guilty of bank robbery because, as someone who was violating the terms of his parole at the time, he had an alternative reason to flee. Defendant Evans's explanation for fleeing, however, does not render his flight inadmissible. As the Seventh Circuit has noted,

---

[6] Defendant Evans's reliance on *Jackson* does not change this conclusion. There, the defendant attempted to flee when law enforcement agents knocked on his door nearly three-and-a-half months after a crime. *Id.* at 640. The Seventh Circuit found that the "substantial lapse of time" between the crime and the defendant's flight "diminishes substantially the likelihood that his precipitous depart[ure] was equated in his thinking with the earlier incident." *Id.* (noting that "as the interval between the crime charged and the flight expands, evidence of the defendant's knowledge that he is being sought for the crime becomes an increasingly important factor in the propriety of drawing the inference from consciousness of guilt to consciousness of guilt concerning the crime charged"). Here, there was no such substantial lapse of time.

16

"[t]hat other interpretations are conceivable, so that flight is not conclusive on the question of guilt, does not mean that the evidence is irrelevant." *United States v. Lewis*, 797 F.2d 358, 368 (7th Cir. 1986); *see also Ajijola*, 584 F.3d at 766 (rejecting the defendant's argument that it was error to admit flight evidence because he had an alternative explanation for his flight and because there was no evidence that he believed he was being pursued in connection with the charged offense). Defendant Evans's flight from law enforcement is therefore admissible. *See Hunter*, 145 F.3d at 951 (holding admissible the defendant's flight on foot after criminal acts and a high-speed chase); *United States v. Pointer*, 17 F.3d 1070, 1072 (7th Cir. 1994). Defendant Evans is free, of course, to argue to the jury that he fled due to his parole violation. *See Wilson*, 237 F.3d at 835; *United States v. Kord*, 836 F.2d 368, 372 (7th Cir. 1988); *Lewis*, 797 F.2d at 368.

### D. Evidence that Defendant Smith Was Preparing to Flee from Law Enforcement Agents

Defendant Smith seeks the exclusion of testimony from law enforcement agents that he was preparing to flee prior to being apprehended. The government does not intend to present this evidence at trial. (R. 130, Gov't's Consolidated Resp. at 16.) Thus, this aspect of the motion is moot, and the government cannot elicit any such testimony.

### E. Evidence of Drugs and a Knife Purportedly Found in the Cadillac

Defendant Smith also asks the Court to exclude evidence that law enforcement agents found a kitchen knife and suspected marijuana and cocaine in the trunk of the Cadillac in which Defendants were traveling. The government does not intend to introduce this evidence (R. 130, Gov't's Consolidated Resp. at 10), and the Court therefore denies this aspect of the motion as moot.

## II. Government's Motions

Defendants have not objected to the government's motions to: (1) preclude evidence and argument about the government's motivation for investigating or prosecuting this case, (2) preclude Defendants from requesting or mentioning discovery in the jury's presence, (3) exclude non-pertinent traits of Defendant's character, (4) exclude evidence regarding the confidential informant's identity, and (5) preclude Defendants from making "golden rule" arguments. Accordingly, the Court grants the government's motions to exclude such matters. As further discussed below, the Court also grants the government's motions to preclude defense counsel from contacting jurors after the trial and improperly using quotations during closing argument.

### A. Post-Trial Contact with Jurors

The government has asked the Court to prevent defense counsel from contacting jurors after the trial. In his response, Defendant Evans "denies the government's assertions that informal, voluntary discussions with jurors after the conclusion of their deliberations runs afoul of any of the rules or principles regarding jury deliberations or service." (R. 124, Def. Evans's Resp. at 4.) The parties are directed to the Local Rules, which provide that "[a]fter the conclusion of a trial, no party, agent or attorney shall communicate or attempt to communicate with any members of the petit jury before which the case was tried without first receiving permission of the court." N.D. Ill. R. 31.1. As such, if the parties wish to speak with members of the jury after trial, they must first obtain leave of the Court.

### B. Use of Quotes in PowerPoint Slides During Closing Argument

Finally, the government seeks to prevent the defense from suggesting that certain statements referred to during closing arguments are verbatim quotes when they may not be.

Counsel for Defendant Evans responds that he may use quotations during his closing argument and that his practice is to take quotations directly from the transcript "[w]here possible" and otherwise from his or his associates' "contemporaneously recorded notes of those statements." (R. 124, Def. Evans's Resp. at 5.)

It should go without saying that lawyers should not make inaccurate statements in court proceedings. *See* N.D. Ill. R. 83.53.3. In arguing that he should be able to use quotations during closing argument, however, Defendant Evans asserts that jurors can simply disregard inaccurate quotations and that "[n]othing about the use of a punctuation mark in a visual presentation during summation is 'unduly suggestive.'" (R. 124, Def. Evans's Resp. at 6.) Common sense and the definition of "quotation mark" belie that argument. Quotation marks attributed to a statement indicate to the listener that the statement is exactly what someone said. Indeed, Merriam-Webster explains that quotation marks are "used chiefly to indicate the beginning and the end of a quotation in which the exact phraseology of another or of a text is directly cited." Merriam Webster Online Dictionary, http://www.merriam-webster.com/dictionary/quotationmark. While courts commonly instruct jurors that "the lawyers' statements to you are not evidence" and that they should use their own memories to determine what the evidence is, *see* 7th Cir. Pattern Crim. Jury Instruction 1.06, that does not mean that parties should be able to give jurors the false impression that a witness or lawyer used specific language when making a statement.

Accordingly, if the parties wish to use a quotation during their closing arguments, they must provide that quotation to the other parties before using it. If another party believes that any such quotation is inaccurate, he or she may raise the issue with the Court.

**CONCLUSION**

For the foregoing reasons, the parties' motions *in limine* are granted in part and denied in part.

Dated: May 25, 2010                    ENTERED:

_____
AMY J. ST. EVE
United States District Court Judge